Filed 4/23/26  P. v. Murillo CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JORGE DAVID MURILLO,<br><br>Defendant and Appellant. | F090418<br><br>(Super. Ct. No. MCR056744B)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Christina Simpson and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Jorge David Murillo appeals after his petition for resentencing under Penal Code section 1172.6[1] was denied following an evidentiary hearing. Appellant challenges the trial court's finding that he is ineligible for resentencing because he acted with reckless indifference to human life. For the reasons set forth below, we affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Appellant's conviction arose out of a 2017 robbery and murder involving appellant, James Ridge, and Kahlid Ramsey. Appellant was charged with murder committed during the course of a felony. Appellant initially pleaded guilty to one count of first degree murder. Under the terms of the plea agreement, appellant agreed to testify truthfully in Ridge's trial in exchange for the right to withdraw his plea and enter a new plea to modified charges, resulting in a stipulated sentence of 18 years in prison instead of a term of 25 years to life. In September 2018, after testifying as required, appellant successfully withdrew his initial plea and entered a guilty plea to a changed set of offenses, including voluntary manslaughter.

In January 2023, appellant filed a petition for resentencing. After the trial court initially denied the petition on procedural grounds, appellant successfully appealed. Following remittitur, the people conceded appellant had made a prima facie showing for relief and requested an evidentiary hearing. The People opposed relief, however, relying on the prior evidence presented at Ridge's trial to demonstrate appellant was a major participant who acted with reckless indifference to human life. The trial court held an

---

[1] Undesignated statutory references are to the Penal Code.

[2] On February 13, 2026, this court took judicial notice of the appellate records and nonpublished opinion filed in *People v. Ridge* (Dec. 18, 2020, F077952). On September 16, 2025, this court took judicial notice of the records from two prior appeals filed by appellant, cases Nos. F079876 and F086398, detailing his prior proceedings and testimony relevant to this appeal.

evidentiary hearing where both parties generally relied on the underlying record and presented argument to the court.

As appellant testified at Ridge's trial, appellant and Elisha Jones developed a plan to beat up and rob James Pany based on allegations that Pany had inappropriately touched young girls associated with Jones's family. At the time, Pany was dating Latisha Logan, Jones's mother. To effectuate the plan, appellant contacted Ridge, and Ridge eventually contacted Ramsey. While appellant knew Logan well and considered her a second mother, neither Ramsey nor Ridge knew either Logan or Pany.

While with Jones, appellant came up with the initial plan to beat up and rob Pany as a response to his conduct. Jones responded to the idea by saying the plan was fine if there were no women present. Appellant described the plan in various ways, including "that [appellant] was going to get a couple guys and a weapon to go rob and beat up" Pany, "take whatever money or whatever he had," and "if he didn't have any, [they] would go to the bank and have him take some money out." Appellant further admitted that he would have beaten Pany up if, during the robbery, Pany did not give appellant money. Appellant planned to use others to help with this goal and intended to use a gun to scare Pany into giving appellant money.

Appellant told Ridge that appellant "had a lick," a slang term for a robbery. On cross-examination, appellant indicated he did not tell Ridge or Ramsey who they would be robbing. Appellant committed two robberies without using a gun prior to the instant offense.

Ridge agreed to participate and said he would bring Ramsey as well. Appellant explained to Ridge that the group would go to Pany's apartment and, when Pany answered the door, get into the apartment and take whatever they could. Appellant also asked Ridge if he had a gun, thinking the robbery would be easier because Pany would give them anything they wanted if he was scared enough. Ridge said he had a gun and

3.

agreed to bring it. When appellant met with Ridge and Ramsey a short time later, Ramsey produced the gun from under the hood of a truck.

After appellant, Ridge, Ramsey, and Jones met up and discussed the plan one more time, appellant drove Ramsey and Ridge to Pany's apartment. When they arrived at the apartment, Ramsey retrieved the gun from under the hood of appellant's vehicle and gave it to Ridge. Appellant claimed not to know whether the gun was loaded. According to appellant, all three then walked up to Pany's front door and said nothing to each other on their way. Appellant claimed to have planned that if someone other than Pany opened the door, the three would leave.

As the three approached the front door, Ridge had the gun drawn, clutched in both hands in front of his belly button. Appellant knocked on the door and then stood slightly to the side. Ridge remained in front of the door and raised the gun after appellant knocked. Logan answered the door instead of Pany and, upon opening it, yelled, "Oh, hell no. What the fuck?" At that point, Ridge shot Logan. Appellant, Ridge, and Ramsey immediately fled to their vehicle.

Appellant drove Ridge and Ramsey to a friend's house, dropped them off, and drove straight to Stockton. After a later conversation with Jones, appellant was apprehended in Stockton. At trial, appellant repeatedly indicated that his recollection of the events was severely limited due to substance abuse.

Ramsey's testimony at Ridge's trial added additional detail to some of the discussions held before the shooting. Relevant to the present appeal, Ramsey confirmed that appellant and Jones had initiated the plan. Ramsey testified that when he and Ridge met up with appellant, Ramsey brought a gun, which had two bullets in the magazine, because Ridge requested Ramsey do so. During the group's discussion about the robbery, Ramsey told the group, "If you want[] to take the gun, you need more ammunition." Appellant stated he had ammunition, and Ridge said, "Reload the gun." Ridge loaded and racked the gun while everyone was present. Ramsey claimed he never

4.

left the vehicle or approached the apartment during the robbery, but he saw Ridge with the gun, heard screaming and a gunshot, and saw Ridge and appellant run back to the vehicle before all three fled, with appellant driving.

The trial court denied appellant's petition for resentencing after hearing argument and based on the testimony and evidence presented. Working through what the court called guidelines related to both the major participant and reckless indifference to human life requirements, the trial court found that appellant was heavily involved in both planning the robbery and procuring the gun used in the shooting. It made its findings beyond a reasonable doubt and specifically noted that appellant being 20 years old at the time of the offense did not negate appellant's role as a major participant or otherwise change the analysis.

This appeal timely followed.

## DISCUSSION

In this appeal, appellant challenges the trial court's determination that he acted with reckless indifference to human life. This finding is part of a two-pronged analysis that asks whether a participant in a robbery resulting in a death was a major participant in the underlying felony who acted with reckless indifference to human life. Appellant does not challenge the major participant finding in this case.

### *Standard of Review and Applicable Law*

Under the resentencing statute, if a petitioner makes a prima facie showing of eligibility, as occurred here, the trial court is required to issue an order to show cause and to hold a hearing to determine whether to vacate the conviction and resentence the petitioner. (§ 1172.6, subds. (c), (d)(1).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (*Id*., subd. (d)(3).) Relevant to the issues in this appeal, under

5.

section 189, a participant in a robbery "in which a death occurs is liable for murder only if … [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

"Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' " (*In re Scoggins* (2020) 9 Cal.5th 667, 676–677.) " 'The degree of risk to human life is crucial to the analysis.' " (*People v. Emanuel* (2025) 17 Cal.5th 867, 884 (*Emanuel*).) However, " '[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient' to establish reckless indifference to human life; 'only knowingly creating a "grave risk of death" ' satisfies the statutory requirement. [Citation.] Notably, 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life." (*In re Scoggins, supra*, 9 Cal.5th at p. 677, first & third bracketed insertions added.)

Our Supreme Court recently outlined the history and foundations of the reckless indifference standard. (*Emanuel, supra*, 17 Cal.5th at pp. 881–886.) The general framework for determining whether a petitioner acted with reckless indifference to human life is well settled, consisting of a "fact-intensive, individualized inquiry." (*In re Scoggins, supra*, 9 Cal.5th at p. 683.) This inquiry considers the totality of the circumstances surrounding the crime to determine whether the accused acted in a manner that created a grave risk of death. (*Emanuel*, at pp. 883, 884–885.)

The inquiry considers the facts from both objective and subjective perspectives, treating both as relevant elements in the analysis. "As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citations.] As to the objective

6.

element, ' "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." ' " (*In re Scoggins, supra*, 9 Cal.5th at p. 677, second bracketed insertion added.)

To aid in reviewing these dual perspectives, our Supreme Court has identified several questions that explore relevant factors in the analysis. No one of these questions is dispositive of the issue, nor is any necessarily sufficient to prove reckless indifference to human life existed. (*Emanuel, supra*, 17 Cal.5th at pp. 884–885.) As the reckless indifference requirement codifies the understanding of the inquiry set forth in *People v. Clark* (2016) 63 Cal.4th 522 (*Emanuel*, at p. 883), we begin by reviewing that analysis.

The questions are: "Did the defendant use or know that a [weapon] would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*In re Scoggins, supra*, 9 Cal.5th at p. 677.) An additional potential factor identified in *In re Moore* (2021) 68 Cal.App.5th 434, 439 is a defendant's youth at the time of the offense.

Upon an appeal following an evidentiary hearing denying relief, "[w]e review the trial judge's factfinding for substantial evidence. [Citation.] We ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and

resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298, third bracketed insertion in original.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

***Substantial Evidence Supports the Reckless Indifference to Human Life Finding***

The trial court considered the required objective and subjective factors and identified evidence supporting a reckless indifference to human life finding that related to several of the questions identified by our Supreme Court as guideposts for the analysis. For example, the court determined appellant clearly knew that a lethal weapon would be present and likely be used. On this point, the court focused on appellant recruiting Ridge while asking him to bring a weapon; assisting in hiding, transporting, and retrieving the weapon in his vehicle; and being present and seeing the gun before knocking on the apartment door.

The court also found appellant was present at the crime, stood near the shooter and the victim, and witnessed the actual shooting. The court determined this gave appellant an opportunity to both restrain the crime and aid the victim because appellant could see the gun drawn in advance, despite claiming the robbery would be called off if women were present, and because appellant witnessed the shooting knowing the victim was not the robbery target. The court noted appellant could have told Ridge to put the gun away before appellant knocked on the door and could have chosen not to immediately flee with Ridge and Ramsey but did neither.

While the court recognized that the actual shooting was a quick act, it found this offset by the fact the overall planning of the robbery, including the travel time, took much longer. Similarly, while the court made no finding appellant knew Ridge may be prone

to violence, it did specifically find appellant was aware of facts supporting a likelihood of using lethal force. These facts included appellant knowing the gun was loaded, discussing calling off the robbery if women were present, and seeing Ridge clutching the gun prior to appellant knocking on the apartment door. The court likewise found that choosing to knock despite Ridge's actions eliminated the possibility of calling off the robbery and thereby resulted in appellant failing to take steps to minimize the possibility of violence. Finally, although the court acknowledged appellant was only 20 years old at the time of the offense, it found his age did not minimize his conduct because appellant had committed two prior robberies and played a major role in planning and executing this one.

Appellant challenges these findings, arguing that all the relevant considerations weigh against a reckless indifference to human life finding. We do not agree. Reviewing the facts presented, this court finds substantial evidence in support of the trial court's ruling. Appellant's extensive role in planning the robbery, direct request that a weapon be present, extensive support of all actions taken in the course of the robbery and shooting, decision to knock on the door despite indications Ridge was already clutching the gun before knowing who would answer, and conduct supporting Ridge and Ramsey in fleeing after seeing someone he claimed was an innocent victim shot all support the conclusion that appellant acted with reckless indifference to human life. Appellant's contrary arguments generally attempt to reweigh the trial court's factual balancing or undercut only some of the weaker facts considered by the trial court. Appellant does not demonstrate that the facts cannot support the court's determination. (See *People v. Cravens, supra*, 53 Cal.4th at p. 508 [conviction shall stand unless no hypothesis is supported by substantial evidence].)

Moreover, in addition to the facts specifically recited by the trial court to support its ruling, additional evidence in the record confirms that substantial evidence supports the court's findings. For example, additional testimony at Ridge's trial shows that

appellant participated in discussions and potentially took actions aimed to ensure the gun was fully loaded and thus not just a prop used for intimidation.  Further testimony from appellant himself shows that he planned the robbery in such a manner that an escalation of violence would occur if Pany failed to immediately comply with the group's demands for money.  As noted, reckless indifference to human life " 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' " (*In re Scoggins, supra*, 9 Cal.5th at pp. 676–677.)  While appellant may not have desired or known a death would occur, particularly if it involved Logan, his actions to ensure the gun was not only present but prepared to be used to its full extent, while expecting that the group would use escalating violence to obtain compliance upon resistance, encompassed a willingness to kill or assist another in killing, as opposed to a mere interest in conducting a robbery.

**DISPOSITION**

The order is affirmed.

HILL, P. J.

WE CONCUR:


DESANTOS, J.


HARRELL, J.

10.